UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIO ENGLISH, | |
| Plaintiff, | Case No. 15-cv-3950 |
| v. | |
| TARRY WILLIAMS, et al., | Judge John Robert Blakey |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mario English sued numerous correctional officers under 28 U.S.C. § 1983 for allegedly using excessive force against him, subjecting him to an unconstitutional strip search, and exhibiting deliberate indifference to his serious medical condition. Defendants Tarry Williams and Samuel Johnson moved for summary judgment on Plaintiff's deliberate indifference claim. For the reasons explained below, this Court grants Defendants' motion.

**I.  Background**

The facts come from Defendants' Local Rule 56.1 statement of facts [131] and Plaintiff's statement of additional facts [138].

On November 2, 2014, Plaintiff was incarcerated at Stateville Correctional Center. [138] ¶ 2. Stateville had Plaintiff under suicide watch—which Defendants call "crisis watch"—meaning that guards checked on Plaintiff in his cell every ten minutes and recorded their observations in a log. [131] ¶ 9; *see generally* [130-6].

1

Around 11:00 a.m. that morning, a guard doing a scheduled check on Plaintiff saw him wearing a string made from a bedsheet around his neck. [131] ¶¶ 11–12. Ten minutes later, the same guard again observed Plaintiff with a string around his neck. [130-6] at 4. Shortly after, multiple guards came to Plaintiff's cell to remove the string; Plaintiff attempted to use the string to end his life before guards took it away from him. [131] ¶¶ 13–15.

According to Plaintiff, the guards then assaulted him. [138] ¶ 2. Plaintiff testified that the guards punched and kicked him at least 20 times (including strikes to his head) and pulled his hair out. *Id.* ¶ 7. Despite the fact that Plaintiff had already submitted to a strip search before the guards started beating him, [131] ¶¶ 17–18, they forced him into the fetal position on the ground, grabbed his right butt cheek, and pulled it aside to examine his anus, [138] ¶ 7.

Plaintiff maintains that Johnson stood outside his cell before and during the attack and had a clear view of the attack, but did nothing to stop the other guards from hurting Plaintiff. *Id.* ¶¶ 3–6. Johnson disputes Plaintiff's testimony and says that he did not arrive at Plaintiff's cell until 12:40 p.m., when he took over the regular checks for crisis watch. [131] ¶¶ 34–35. Under Plaintiff's version of events, Johnson and the other guards stood within earshot of Plaintiff's cell after the attack and ignored Plaintiff's cries for help. [138] ¶ 8. Plaintiff says that, while the guards remained outside his cell, he stomped on his bed to make noise and alert anyone who could possibly help him. [130-2] at 31 ("I was basically calling for help, like, anybody besides them. If anybody could hear me.").

2

Neither side explains who brought Plaintiff to get medical attention, but Plaintiff saw a nurse by 12:15 p.m. the same day—about an hour after the assault. *See* [131] ¶ 33; [138] ¶ 10. Plaintiff told the nurse that his body hurt "all over." [138] ¶ 10. The nurse noted some "mild erythema," or redness, on Plaintiff's leg, but documented that Plaintiff had no other visible injuries. [130-3] at 2.

The parties agree that Williams, Stateville's then-warden, neither participated in nor witnessed the attack. [131] ¶ 40. Plaintiff says that he later wrote to Williams about the assault and "requested an investigation."[1] [138] ¶ 12. Plaintiff received a "non-substantive, form letter response" in early December. *Id.* ¶ 14. According to Williams, his designee "jal" responded to Plaintiff's letter. [131] ¶ 43. Williams does not remember receiving a letter from Plaintiff or responding to Plaintiff, and Williams says that he did not sign the form letter. *Id.* ¶¶ 42, 44. An investigator from Stateville's Internal Affairs Unit testified, however, that Williams would have gotten notice of Plaintiff's alleged assault by staff members through a written "reportable" that traveled up the chain of command. [138] ¶¶ 15–17; *see also* [138-4] at 14–16.

---

[1] In a declaration, Plaintiff also said that he told Williams about the assault in person and verbally requested an investigation. [138-1] ¶ 9. That assertion contradicts Plaintiff's earlier deposition testimony. In response to a direct question asking when Plaintiff told Williams about the assault, Plaintiff responded: "I wrote him a letter in November of 2014." [130-2] at 41. Plaintiff said nothing about speaking to Williams personally. *Id.* Declarations like Plaintiff's, though signed under oath, typically represent a lawyer's work product; thus, when offered to contradict the declarant's prior sworn testimony, they lack credibility and deserve "zero weight in summary judgment proceedings unless the affiant gives a plausible explanation for the discrepancy." *Beckel v. Wal-Mart Assocs., Inc.*, 301 F.3d 621, 623 (7th Cir. 2002). Here, Plaintiff offers no such explanation for the discrepancy, and the declaration appears designed to manufacture an issue of fact about Williams' knowledge. Thus, this Court disregards paragraph 9 of Plaintiff's declaration. *See id.*

## II. Legal Standard

Courts should grant summary judgment when the moving party shows that no genuine dispute exists as to any material fact and the evidence weighs so heavily in the moving party's favor that the moving party "must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see also* Fed. R. Civ. P. 56. A genuine dispute as to a material fact exists when, based upon the evidence, a reasonable jury could find for the non-moving party. *Anderson*, 477 U.S. at 248. To show a genuine dispute as to a material fact, the non-moving party must point to "particular materials in the record," and cannot rely upon the pleadings or speculation. *Olendzki v. Rossi*, 765 F.3d 742, 746 (7th Cir. 2014).

At summary judgment, courts must evaluate evidence in the light most favorable to the non-moving party and refrain from making credibility determinations or weighing evidence. *Rasho v. Elyea*, 856 F.3d 469, 477 (7th Cir. 2017) (citing *Anderson*, 477 U.S. at 255). The moving party bears the burden of establishing the lack of genuine disputes as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## III. Analysis

### A. Objectively Serious Medical Condition

Defendants first argue that Plaintiff's deliberate indifference claim fails because he did not have a serious medical condition, given his lack of any objective symptoms. [130-1] at 3–4. Plaintiff contends that the pain he felt demonstrated a serious medical condition. [137] at 3–5.

To succeed on a claim of deliberate indifference to a medical condition, Plaintiff must show: (1) an objectively serious medical condition; and (2) an official's subjectively deliberate indifference to that condition. *Gonzales v. Feinerman*, 663 F.3d 311, 313 (7th Cir. 2011). A "serious" medical condition means one that a physician has diagnosed as requiring treatment, or a condition "so obvious that even a lay person would easily recognize" the need for a doctor's attention. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009) (quoting *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006)). That said, the law does not require "objective symptoms" as evidence of an objectively serious medical condition; pain "and other subjective, nonverifiable complaints are in some cases the only symptoms of a serious medical condition." *Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996).

Although Plaintiff did not show many visible effects from the alleged attack, he told a nurse that his body hurt "all over." [138] ¶ 10. If a jury believed Plaintiff's subjective complaint, the jury could reasonably find that he had an objectively serious medical condition. *See id.* (Requiring "a threshold showing of an 'objective' injury" would "confer immunity from claims of deliberate indifference on sadistic guards," since they might "inflict substantial and prolonged pain without leaving any 'objective' traces on the body of the victim.").

**B.      Johnson**

Defendants next argue that Plaintiff's claim against Johnson fails because "the only objective and credible evidence in the record"—the crisis watch log— undermines Plaintiff's claim that Johnson saw the attack. [144] at 3 (citing *Scott v.*

5

*Harris*, 550 U.S. 372, 380 (2007)). Defendants misread *Scott*. *Scott* involved uncontested video evidence of a car chase that contradicted the fleeing driver's version of events. 550 U.S. at 378–80. In contrast, the crisis watch log consists of multiple pieces of paper full of handwritten entries signed by Stateville guards. *See* [130-6]. Plainly, this Court cannot rely on those handwritten notes to discredit Plaintiff's testimony. Aside from *Scott* and a few other limited exceptions, this Court may not make credibility determinations or weigh evidence at summary judgment. *Rasho*, 856 F.3d at 477. For purposes of Defendants' summary judgment motion, this Court must credit Plaintiff's testimony that Johnson saw the attack and did nothing when Plaintiff called for help. *See id.*

Plaintiff's claim against Johnson, however, still fails based upon the record. A guard's delay in treating "non-life-threatening" conditions might constitute deliberate indifference if the plaintiff has a "sufficiently serious or painful" medical condition. *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008). But a plaintiff who claims deliberate indifference in the form of a delay must produce "verifying medical evidence" that "his condition worsened because of the delay." *Knight*, 590 F.3d at 466 (internal quotation marks omitted). Plaintiff provided no medical evidence that his condition worsened because of the (at most) hour-long delay between the attack and when he saw a nurse. Rule 56 mandates granting summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Thus, this Court grants

6

summary judgment to Johnson.

C. **Williams**

Defendants argue that Plaintiff's claim against Williams fails because Williams never saw the letter that Plaintiff sent him. [144] at 4. Even assuming Williams did see the letter, Plaintiff's claim cannot proceed.

Plaintiff testified that he wrote Williams a letter informing him of the attack and "requested an investigation." [138] ¶ 12. So, in Plaintiff's own words, his letter (which neither side produced to this Court) said nothing about his need for medical attention, but rather asked Williams to investigate the guards' alleged wrongdoing, ostensibly for disciplinary purposes. Prison administrators must act if they know that medical professionals are mistreating or ignoring inmates, "but this was not the concern" that Plaintiff presented to Williams. *See Burse v. Komorowski*, 521 F. App'x 574, 577 (7th Cir. 2013) (citing *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010)). Plaintiff saw a nurse within an hour of the attack, and Plaintiff does not explain what further medical care he wanted Williams to procure for him—notably, he never sued the nurse for deliberate indifference.

Besides, the Seventh Circuit has held that, in the context of prison bureaucracies, an inmate cannot hold a public official liable for deliberate indifference simply by writing a letter to that official about a medical issue. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Because bureaucracies divide tasks for the sake of efficiency, non-medical officials may properly "relegate to the prison's medical staff the provision of good medical care." *Id.* Indeed, Plaintiff's

7

view that Williams should face § 1983 liability under these circumstances would lead to the untenable result that Plaintiff could write letters to 1,000 public officials, "demand that every one of those 1,000 officials drop everything" to investigate his claims, "and then collect damages from 1,000 recipients if the letter-writing campaign does not lead to better medical care." *Id.* Because Plaintiff failed to produce any evidence beyond the single letter to suggest that Williams exhibited deliberate indifference to his serious medical condition, this Court grants summary judgment to Williams. *See Celotex*, 477 U.S. at 322.

## IV. Conclusion

This Court grants Defendants' motion for summary judgment [130]. The Clerk shall enter judgment for Tarry Williams and Samuel Johnson against Plaintiff. The motion hearing set for August 7, 2018 at 9:45 a.m. in Courtroom 1203 stands, but as a status hearing. All other dates and deadlines stand.

Dated: July 11, 2018

                                          Entered:

                                          John Robert Blakey
                                          United States District Judge